PEOPLE ex rel. VAN TASSEL v. SUPERVISORS.   275

THIRD DEPARTMENT, SEPTEMBER TERM, 1876.

THE PEOPLE ex rel. WM. H. VAN TASSEL, Respondent, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF COLUMBIA, Appellant.

*Sheriffs — Chapter 495 of 1847 — fees of officers in criminal proceedings under — by whom audited — Common council of Hudson — power of to audit claims — § 97, chapter 468 of 1872.*

The term "criminal proceedings," as used in chapter 495 of 1847, providing for the payment, by the several towns and cities, of all fees and accounts of magistrates and other officers for criminal proceedings, instituted for certain offenses committed therein, embraces all necessary and legal actions by magistrates and ministerial officers having in view the punishment of public offenders and violators of public rights and duties, as distinguished from civil injuries.

Where the sheriff of the county of Columbia rendered services in receiving, discharging and boarding prisoners committed to jail by the police justice of the city of Hudson for offenses committed therein, none of which were felonies, *held*, that even if some of the cases in which they were rendered did not fall within the strict definition of "criminal proceedings," yet as they were all rendered in other than civil proceedings, and in the line of his official duties he was entitled to compensation therefor.

A just allowance in such cases would be the amount fixed by statute for similar services in other proceedings.

Under section 97 of chapter 468 of 1872, providing that the common council of the city of Hudson shall be "the board of auditors to examine the accounts of officers of the city, with the same powers and shall proceed in the same way as is prescribed by law for the board of town auditors in towns," the common council is not restricted to the examination and audit of the accounts of "officers" of the city, but it is vested with all the powers possessed by the board of town auditors of towns, and it is its duty to audit bills presented by the sheriff of Columbia county for services chargeable under the act of 1847, upon the said city.

Appeal from an order of the Special Term, granting a writ of peremptory mandamus requiring the board of supervisors of Columbia county to allow a claim presented by the relator, as sheriff of said county. His claim of $2,548.75 was made up of items for fees in receiving and discharging, and for board of prisoners committed to jail by the police justice of the city of Hudson in cases not felonies, but principally in cases of intoxication in public places; of vagrancy and of violations of ordinances of the common council of the city. All the charges related to proceedings in which the offenses punished or investigated occurred in the city of Hudson.

276 PEOPLE ex rel. VAN TASSEL v. SUPERVISORS.

THIRD DEPARTMENT, SEPTEMBER TERM, 1876.

The board of supervisors refused to audit or assess the claim, or any part of it, on the ground that the items thereof were not county charges, and had not been audited and allowed by the "board of auditors" of the city of Hudson; and that it was made unlawful for their body "to audit or allow any account chargeable to said city." The Special Term held their refusal to audit and to assess the claim erroneous and improper, and granted the writ of mandamus as demanded. From the order granting such writ an appeal was taken to the General Term.

*R. E. Andrews*, for the appellant.

*C. P. Collier*, for the respondents.

BOCKES, J. :

We do not understand that the claim of the relator includes any illegal or improper charge. The items of which it is composed are such as the law authorizes, and the bill was duly verified. The question is, by what public body should it be audited and allowed, and how may payment be enforced? Are the items subjects of town or county charges? In so far as the claim of the relator is made up of legal fees and just matters of account "for criminal proceedings," the case would seem to be covered, to a very considerable extent, if not entirely, by the act of 1845, amended in 1847. That act was enacted, in part, to compel the several towns and cities to pay the expenses incurred in cases where the offenses were committed therein respectively, and is as follows : "All fees and accounts of magistrates *and other officers*, for criminal proceedings * * * shall be paid by the several towns or cities wherein the offense shall have been committed, and all accounts rendered for such proceedings shall state where such offense was committed, and the board of supervisors shall assess such fees and accounts upon the several towns or cities designated by such accounts."

The exceptions to this general expression, contained in this act, need not be here noticed, inasmuch as none of the items of charge in the relator's bill come within them. Now, it will be seen, on examination of the relator's account, that the charges are principally for fees and accounts incurred in criminal proceedings within

the plain intent of that statute. The language employed should be accepted in its more liberal and extended signification, with a view to carry out the manifest purpose which the legislature had in view, to wit: to charge upon towns and cities respectively the expenses incurred therein, in proceedings to enforce laws relating to criminal or *quasi* criminal matters. So, "criminal proceedings" were evidently here intended to embrace all necessary and legal actions by magistrates and ministerial officers, having in view the punishment of public offenders and violators of public rights and duties as distinguished from civil injuries. In the popular mind such persons are criminals, and proceedings against them on behalf of the people with a view to their punishment are deemed "criminal proceedings." Perhaps some few of the items of charge in the relator's bill may not fall strictly within the letter of the law, giving the terms "crime" and "criminal" their strictest legal definition, but all of them were incurred in other than civil proceedings, and were proper subjects of compensation, as they were necessarily incurred by the relator in the line of his official duties. We fully agree with the learned judge in his remarks at Special Term, that there is no justice in saying that the relator should not be paid for services which, as a public officer, he was bound to perform, and that under the general power given to auditors, a board of audit might allow a reasonable compensation for such services, and that a sound discretion might indicate as a just allowance in such cases, what was fixed by statute for similar services in other instances. These remarks have application to but few of the items, for most of them pertain unmistakably to criminal proceedings, and all are believed to fall within the provision of the act above cited. So it would seem that the items of charge in the relator's bill were proper subjects of audit under the act of 1845, amended in 1847; and if so, then according to that act the bill was legally assessable upon the city of Hudson. The act declares that the fees and accounts, as therein specified, shall be paid by, and assessed upon the several towns or cities wherein the offense shall have been committed. But the bill for such fees and accounts was first to be audited and allowed; and the question now arises, on whom did this duty devolve? If sound in the conclusion above reached, the relator's claim was against the city of Hud-

278    PEOPLE ex rel. VAN TASSEL v. SUPERVISORS.

THIRD DEPARTMENT, SEPTEMBER TERM, 1876.

son. When audited it would be a charge upon that city, which by its charter was to be regarded and treated as one of the towns of Columbia county. Now, on what officers or public body did the law impose this duty, that is, the duty of auditing bills against the city, regarded for this purpose as one of the towns of Columbia county? The general statutes of the State provide for a board of town auditors "for the purpose of auditing and allowing the accounts *of all charges and claims payable by their respective towns.*" (1 R. S. [6th ed.], 845, § 65.) The board is required to meet annually for the purpose of auditing and allowing such accounts (Id., § 66), and to certify duplicates of the audited bills, one to be delivered to the supervisor of the town, to be by him laid before the board of supervisors of his county at their annual meeting (Id., § 67); and that board is required to cause the sum so audited, allowed and certified "to be levied and raised upon said town" (Id., § 68), and the supervisors have no discretion but to direct the amount to be so levied and raised. (*The People* v. *Supervisors of Queens*, 1 Hill, 195–199.) By the city charter (§ 97), the common council of the city of Hudson is made the board of auditors "to examine the accounts of officers of the city, with the same powers, and shall proceed in the same way, as is prescribed by law for the board of town auditors in towns;" and further it is provided that "it shall not be lawful for the board of supervisors of the county of Columbia to audit or allow any account chargeable to said city." Here then was created a board of audit for the city, with the same powers, and it was to proceed in the same way, as prescribed by law for the board of town auditors in towns. Thus this board superseded and took the place of a town board as to all accounts against the city, and hence it devolved on it to audit the relator's account, which, as we have seen, constituted a claim against the city. This would follow from the provision of the charter, which vested the common council, as a board of audit, with the same powers and duties devolving by law upon the board of town auditors, to wit, the auditing and allowing "the accounts of all charges and claims payable by their respective towns." It is suggested that section 97 of the charter above alluded to confers the right of audit upon the common council, only as to

PEOPLE ex rel. VAN TASSEL v. SUPERVISORS. 279

Third Department, September Term, 1876.

"*the accounts of officers of the city,*" and that the sheriff is not such officer. But waiving what might perhaps be urged, that in giving fair and just effect to the intent of the legislature, the sheriff, as regards these matters of town (or city) charges, should be deemed to be an officer of the city, it is manifest that the city board of auditors were vested with the full powers of town auditors in their respective towns. This board was to examine the accounts of officers of the city, some of whom would be other than those of towns, with the same powers, etc., prescribed by law for town auditors: that is, that the common council, as a board of auditors, should have the power to examine the accounts of officers of the city, and should exercise the same powers "*prescribed by law for the board of town auditors in towns.*" This construction and interpretation of the law seems reasonable, in view of its manifest purpose and of the several sections relating to the subject. The claim should be audited and allowed before the amount should be levied and assessed. The right to audit or allow it was taken from the board of supervisors by explicit enactment. There was no other body than the city board of auditors having authority to examine and allow it, and it is believed that such board has the requisite authority under the city charter, which, by fair intendment, if not in express terms, vests the common council, as a board of auditors, with the same powers prescribed by law for the board of town auditors in towns. If so, then it devolves upon such board to audit and allow "*the accounts of all charges and claims payable*" by the city. (Sec. 65, *supra.*) It is suggested that such construction will necessitate the making out of bills by the sheriff, against the county and the various towns as well. But there is neither difficulty or hardship in this, inasmuch as that officer has the *data* at hand to answer this requirement.

If the conclusions above reached be sound, the order of the Special Term granting the writ of mandamus against the board of supervisors was improperly granted. The relator's claim had not been audited and certified to that body as required by law. That body had no right or authority to audit or allow the claim ; nor had it right or authority to levy and raise the amount, until it was legally audited and allowed.

The order appealed from must be reversed, and the motion for

the writ denied; but the questions considered being of a public character, new and somewhat intricate, there should be no costs allowed to either party.

The order appealed from reversed, and the motion for a mandamus denied, without costs.

LEARNED, P. J., and BOARDMAN, J., concurred.

Order reversed and motion for mandamus denied.